IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS JAMES NEWILL,<br>Plaintiff,<br><br>v<br><br>CAMPBELL TRANSPORTATION COMPANY, INC.,<br>Defendant. | )<br>)<br>)<br>)<br>) 2:12-cv-1344<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court are Defendant CAMPBELL TRANSPORTATION COMPANY, INC'S MOTION TO STRIKE PLAINTIFF'S NOTICE TO COURT CONCERNING PHOTOGRAPHS PRODUCED TODAY BY U.S. COAST GUARD (ECF No. 37) and PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PAY ALL COSTS, EXPENSES, AND ATTORNEY'S FEES FOR RE-DEPOSING CERTAIN FACT WITNESSES REGARDING LATE-PRODUCED DOCUMENTS (ECF No. 26) filed by Thomas James Newill ("Plaintiff"). The parties have extensively briefed the motions. (ECF Nos. 30, 33, 41). Accordingly, they are ripe for disposition.

### I.  Background

This is a Jones Act negligence case, which arose on January 13, 2012, when Plaintiff, a deckhand aboard a CTC towboat, the M/V ALLEGHENY, allegedly slipped and fell on alleged sheet of snow-covered ice on a barge ("CBL-7810") that was in the M/V ALLEGHENY's tow. Plaintiff alleges, *inter alia*, that CTC failed to properly clear the deck on the barge prior to the incident. The parties' current discovery dispute centers on CTC's late-production of three photographs taken by now-retired CTC Safety Manager Michael Sosnak ("Sosnak"), which depict the conditions on the barge sometime after the slip-and-fall occurred. Aside from a set of

photographs taken by the United States Coast Guard ("USCG" or "Coast Guard"), which Plaintiff obtained through a Freedom of Information Act ("FOIA") request and which are the subject of CTC's motion to strike, these are the only photographs of the barge taken around the time of Plaintiff's slip-and-fall. As such, Plaintiff contends that they are significantly relevant to his claim, and he would like to re-depose certain witnesses regarding said photos.

To date, the parties have engaged in fairly extensive discovery, especially in light of the seemingly simple issues involved.[1] On September 19, 2012, the day after this lawsuit was filed, Plaintiff's counsel sent both CTC and its counsel a letter advising CTC to implement a litigation hold, specifically requesting that CTC preserve all photographs concerning Plaintiff's accident. CTC placed responsibility for gathering discovery materials with Steven Grizzel ("Grizzel"), its Director of Human Resources. *See* Aff. of Grizzel 1, Def.'s Ex. E (ECF No. 30). Grizzel was Sosnak's supervisor before Sosnak retired on April 6, 2012. *Id.* Prior to his retirement, Sosnak's job duties included investigating and documenting accidents involving CTC's vessels and personnel. *See* Pl.'s Reply Br. 3 (ECF No. 33). All of the materials Sosnak gathered or produced during an accident investigation were to have been placed in a filing cabinet in his office. *See* Aff. of Grizzel 1, Def.'s Ex. E (ECF No. 30).

When Sosnak retired, G.T. McClain ("McClain") succeeded him as Safety Manager and assumed responsibility for maintaining the filing cabinets in his former office. *Id.* After this lawsuit was initiated, Grizzel asked McClain to check the filing cabinets for potentially relevant materials. *Id.* McClain followed that directive and turned over various documents to Grizzel. *Id.* The barge photographs at issue here were not among them. *Id.* This was consistent with the fact that Sosnak never told Grizzel that he had taken any photographs of the barge prior to his

---

1. CTC claims to have produced 338 documents as part of its Initial Disclosures and 1,664 documents in response to Plaintiff's first request for production of documents. *See* Def.'s Resp. to Pl.'s Mot to Comp. 10 (ECF No. 30). It has since supplemented its production with an additional 150 documents. *Id.* at 10 n.1.

retirement. *Id.* at 2. As a result, copies of the photographs were not disclosed in late December 2012, when CTC served its Initial Disclosures on Plaintiff.

On February 7, 2013, Plaintiff served CTC with his first set of document requests. Request No. 19 asked for, in part:

> [a]ll . . . photos . . . comprising or concerning the accident, any investigation Defendant or any other person or entity made of the accident, or which concern conditions aboard the M/V ALLEGHENY or its tow of barges at the time of the accident. If such materials exist in electronic form, please produce such in electronic form.

Again, the barge photographs were not produced.

Sometime thereafter, Plaintiff served Sosnak, through counsel for CTC, with a subpoena duces tecum. The subpoena requested that Sosnak bring "[a]ll . . . photos . . . including original digital files, in [his] possession, custody, or control, concerning the accident" along with him to his deposition. Pl.'s Mot. to Comp. 6 (ECF No. 26). Plaintiff's counsel decided to issue the subpoena because in another case involving CTC in which Sosnak was deposed, Sosnak responded to a subpoena by turning over "significant documents comprising Sosnak's investigation of the accident, documents that CTC had . . . failed to produce in Initial Disclosures or in response to Rule 34 document requests." *Id.* at 5-6. After receiving the subpoena, CTC's counsel apparently asked Sosnak whether he had any of the requested documents, and Sosnak responded that he did not. Def.'s Resp. to Pl.'s Mot. to Comp. 14-15 (ECF No. 30). On May 31, 2013, Plaintiff deposed Sosnak at his home in Brownsville, Pa., and the following exchange took place relative to the photographs:

> Q. Do you have in your possession, custody or control any of the documents or other forms of information which are requested in those three paragraphs on the Subpoena Duces Tecum portion of your Notice of Deposition?
> A. No.
> Q. The reason that I ask, in the other case that we were here for, you did have a personal file which you had in a manila envelope or something like

> that.
> A. Okay.
> Q. Why did you have documents here at the house in that other case, but not in this one?
> A. I can't answer that question. I don't know.
> \*\*\*
> Q. Did you take any photographs in the course of your investigation of Tom Newill's accident?
> A. No, not that I can recall.

Sosnak's response regarding the existence of any photographs of the barge was called into question on July 15, 2013, when Plaintiff deposed John Mozie ("Mozie"), a former CTC deckhand who witnessed Plaintiff's fall. The deposition was conducted by video because Mozie now resides in Florida. Contrary to Sosnak's recollection, Mozie testified that he saw Sosnak taking pictures of the barge with a digital camera after the accident. On July 19, 2013, another CTC employee, Jason Woodling ("Woodling"), testified that he also recalled Sosnak taking pictures of the barge. He called this "standard procedure. They always come on any time an accident happens and take pictures."

Mozie's response prompted CTC and its counsel to undertake an investigation into whether photographs did, in fact, exist. *See* Aff. of Grizzel 3, Def.'s Ex. E (ECF No. 30). The investigation started with an unidentified CTC employee (presumably Grizzel) contacting McClain and asking him to search Sosnak's former office for photographs. Letter from CTC to Plaintiff, Aug. 9, 2013, Pl.'s Ex. B (ECF No. 26). McClain did not find any photographs, "but he did advise that, on occasion, Mr. Sosnak did take photos with a camera. The camera used by Mr. Sosnak had been in Mr. McClain's desk since Mr. Sosnak's retirement but never used (Mr. McClain prefers using the camera on his cell phone)." *Id.* CTC then asked McClain to examine the camera's memory card to determine whether it contained any relevant photographs. *Id.* McClain took the memory card to a Wal-Mart store and confirmed that the memory card did not

4

hold any photographs taken by Sosnak. *Id.* McClain was then asked what Sosnak may have done with any photographs taken with the camera, and he responded that "it was possible that [Sosnak] had taken his camera to [Nicole Nucci, a former CTC clerical worker] and asked her to download the photos" onto her computer. *Id.* After confirming that Nucci's computer still existed, Grizzel had it delivered to him at CTC's Houston, Pa. office, where he determined that the entire contents of the memory card had been downloaded onto the computer. *Id.* On July 24, 2013, Grizzel contacted Sosnak. *Id.* In contrast to that which he had testified in his deposition, Sosnak now partially recalled having taken a few photographs following Plaintiff's accident, but he still harbored some uncertainty. *Id.* He also explained that the memory card he had used at CTC was in his possession, after having been given to him, along with a camera, when he retired because it contained some personal photographs in addition to those he took as part of his investigatory duties. *Id.* Later that day, Sosnak inserted the memory card into the camera and viewed its contents. *Id.* He noticed what looked like photographs of CBL-7810; however, because the photographs appeared so small on the camera's screen, he was still uncertain. *Id.* The next day, Sosnak delivered the memory card to the office of CTC, where it was confirmed that the photographs were the same as those on Nucci's former laptop. *Id.* On July 26, 2013, Sosnak, upon reviewing enlarged prints of the photographs, confirmed that they were the same ones that he had taken on January 13, 2012, as part of his investigation into Plaintiff's fall.[2] That same day, the photographs were produced to Plaintiff. *Id.*

On July 30, 2013, Plaintiff's counsel sent an e-mail to counsel for CTC and asked CTC to bear the cost of re-deposing certain witnesses, including Sosnak, so as to permit Plaintiff to ask

---

2. Although Plaintiff's accident happened on January 13, 2012, the photographs are time-stamped March 15, 2008. CTC's counsel attributes the erroneous time-stamp to Sosnak's inability to properly work his camera. This is one of the issues that Plaintiff would like to resolve at a second deposition of Sosnak.

5

questions about the tardily produced photographs. CTC's counsel responded on August 5, 2013, designating certain persons to appear on CTC's behalf for a second Rule 30(b)(6) deposition but refusing Plaintiff's request to pay the related costs. Plaintiff's counsel then sent another e-mail asking specific questions about the three photographs, in hopes of obviating the need for further depositions. CTC responded with the letter dated August 9, 2013, in which it attempted to explain the steps taken to uncover the photographs and why they were not previously produced.

Counsel for Plaintiff apparently did not find the letter to be a sufficient substitute for re-deposing Sosnak, and the parties could not otherwise amicably resolve the matter. Plaintiff's motion to compel then followed, with Plaintiff seeking (1) to re-depose Sosnak about the photographs with the costs to be paid by CTC; (2) to re-depose Mozie, if necessary, about the photographs with costs to be paid by CTC; and (3) pursuant to Fed. R. Civ. P. 37(a)(5)(A), reasonable expenses, including attorney's fees, incurred in filing this motion. CTC opposes Plaintiff's motion and argues that neither Sosnak nor Mozie should be permitted to be re-deposed. Alternatively, CTC contends that even if Sosnak and Mozie are permitted to be re-deposed, there is no basis for imposing the costs of the depositions on CTC or imposing others sanctions.

On October 30, 2013, after the motion to compel had been fully briefed, Plaintiff filed a Notice to the Court concerning the Coast Guard photographs. (ECF No. 35). The nine photographs, which Plaintiff attached to his Notice, were taken by Coast Guard personnel on January 13, 2012, the day of Plaintiff's accident. *Id.* On November 1, Defendant CTC filed a motion to strike the photographs from the docket, arguing that under they are not admissible as evidence or subject to discovery under 46 U.S.C. § 6308 and thus may not be considered by the Court. (ECF No. 37).

The Court will first address CTC's motion to strike, as it is necessary to consider whether the photographs are properly before the Court in ruling on the Plaintiff's motion to compel.

## II. Discussion

### A. CTC's Motion to Strike

CTC contends that the Coast Guard photographs must be stricken from the docket because 46 U.S.C. § 6308(a) makes "no part of a report of a marine casualty investigation conducted under section 6301 of this title . . . admissible as evidence or subject to discovery" in civil cases. Def.'s Mot. to Strike 1 (ECF No. 38). Plaintiff disputes that the photographs are inadmissible under § 6308(a), arguing that they are not part of a "report of a marine casualty investigation" because the Coast Guard never prepared such a report in this case. He further argues that, even if they are inadmissible, they may still be considered by the Court in deciding the motion to compel because they "arguably represent another instance, part of a pattern, of CTC's failure to abide by its federal court discovery obligations." Pl.'s Resp. 2 (ECF No. 41).

The parties are getting ahead of themselves at this stage of the lawsuit in arguing about the admissibility or inadmissibility of the photographs as evidence at a trial that may not even occur. The Court need not decide that question at this time.

Even accepting CTC's argument that the photographs were part of a "report of a marine casualty investigation" – an argument through which Plaintiff has poked some holes – § 6308(a) only renders such reports not "subject to discovery" and inadmissible at trial. The photographs were not "subject to discovery" in the traditional sense of that phrase, as Plaintiff obtained them through a FOIA request and not through the Federal Rules' discovery mechanisms. Furthermore, CTC has not cited any authority which holds that the Court may not acknowledge that parts of the USCG's report exist when ruling on a discovery motion – again, assuming the

7

photos were part of such a report. Instead, all of the cases cited by CTC dealt with situations where the court, either at the summary judgment stage or on the eve of trial, was being asked to consider the contents of a USCG report as substantive evidence but refused to do so. That is not what Plaintiff is seeking to do here. At this point, he is only trying to show that these pictures exist; that CTC failed to refer to them in its responses to Plaintiff's discovery requests, even though they were plainly included within the scope of the requests; and that they offer further support for his argument that Sosnak's deposition needs to be re-opened, so that he can be asked why his photos are seemingly different from the Coast Guard's even though they were taken on the same date. Section 6308(a) does not prohibit using the photographs for such purposes, and, at this stage, the Court will not consider them for any other purpose. Because Plaintiff's filing of the photos was not necessarily improper, the Court will decline to exercise its inherent authority to strike them from its docket. *Zepeda v. Paypal, Inc.*, Nos. C 10–2500 SBA, C 10–1668 SBA, 2013 WL 2147410, at *3 (N.D. Cal. May 15, 2013) ("The law is clear that district courts have the inherent power to control their docket, and in the exercise of that power, they may properly strike improper documents.") (Citations omitted). Accordingly, CTC's motion to strike will be **DENIED,** however without prejudice. In so ruling, the Court does not mean to suggest that the photos will be admissible as substantive evidence at some later point in this litigation. It is simply premature at this time to decide that question. CTC or Plaintiff should, therefore, re-raise the issue of admissibility at the summary judgment stage or in a motion *in limine* before trial.

      **B.**      **Plaintiff's Motion to Compel**

The Federal Rules of Civil Procedure require a party to disclose a copy of all documents, within its possession, custody, or control, which it may use to support its claims or defenses, without awaiting a formal discovery request from the opposing party. Fed. R. Civ. P. 26(a). A

party's Initial Disclosures must be made "based on the information then reasonably available to it." Fed. R. Civ. P. 26(a)(1)(E). Accordingly, prior to serving its Initial Disclosures, a party must "make a reasonable inquiry into the facts of the case." Fed. R. Civ. P. 26, advisory committee notes on 1983 amendment. As the Advisory Committee notes to Rule 26 further explain:

> [t]he rule does not demand an exhaustive investigation at this stage of the case, but one that is reasonable under the circumstances, focusing on the facts that are alleged with particularity in the pleadings. The type of investigation that can be expected at this point will vary based upon such factors as the number and complexity of the issues; the location, nature, number, and availability of potentially relevant witnesses and documents; the extent of past working relationships between the attorney and the client, particularly in handling related or similar litigation, and of course how long the party has to conduct an investigation, either before or after filing of the case.

*Id.* Similarly, prior to responding to a request for production of documents under Rule 34, a party must undertake a reasonable search to determine whether it has any responsive documents in its possession, custody, or control. *See Robinson v. City of Arkansas City*, No. 10–1431–JAR–GLR, 2012 WL 603576, at *4 (D. Kan. Feb. 24, 2012) (citation omitted). Consistent with these requirements, after a litigation hold is issued, a party must identify potentially "key players" in the litigation "who [are] likely to have relevant information" and then ensure that these key players turn over all of the relevant material in their possession. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004). When an attorney signs discovery responses, as is required by Rule 26(g), he certifies that such an effort has been made. *Winner v. Etkin & Co., Inc.*, No. 2:07-cv-903, 2008 WL 5429623, at *4 (W.D. Pa. Dec. 31, 2008) (citation omitted). Moreover, the obligations imposed by these Rules are continuing in nature, as a party must "amend a prior response to an interrogatory, request for production, or request for admission if [it] learns that the response is in some material respect incomplete or incorrect." *Id.* (citing Fed.

R. Civ. P. 26(e)(2)).

With these principles in mind, the Court finds that CTC did not conduct a reasonable investigation into whether Sosnak had taken any photographs of the barge *prior to* serving its Initial Disclosures and responding to Plaintiff's first requests for production. As described in CTC's brief and Grizzel's affidavit, Grizzel's investigation consisted entirely of asking Sosnak's replacement, McClain, to check a filing cabinet in Sosnak's former office. When that initial search failed to turn up any photographs, CTC never made any further efforts to determine whether photographs might have been taken and simply never made it into the filing cabinet – even after being served with Plaintiff's document requests. *See* Def.'s Resp. at 14 (ECF No. 30) ("[W]hen served with a request for production of documents, Grizzel *relied upon the materials previously produced* in CTC's initial disclosures.") (Emphasis added).

This was despite the fact that Grizzel knew, thanks to his years spent handling "personal injury suits filed against CTC and coordinating the gathering of documents," Aff. of Grizzel, Def.'s Ex. E (ECF No. 30), that Sosnak sometimes took photographs as part of his investigations. Indeed, as Plaintiff points out, in late 2011/early 2012, Grizzel, working on behalf of CTC, produced four photographs from the same memory card containing the photographs at issue here in the case *Strope v. CTC, Inc., et al.*, 2:11-CV-431 (Hornak, J.). Even Plaintiff's fellow deckhand Woodling knew that it was "standard procedure" for photographs to be taken after accidents onboard CTC's vessels. Since CTC and its counsel are experienced in handling litigation involving accidents on CTC's vessels, in the least, Grizzel should have attempted to confirm whether Sosnak followed the "standard procedure" in this case. *See* Fed. R. Civ. P. 26, Advisory Committee notes on 1983 amendment (explaining that the magnitude of the required investigation under Rule 26 is driven in part by "the extent of past working relationships between

the attorney and the client, particularly in handling related or similar litigation").

CTC is mistaken insofar as it argues that Grizzel did not have to extend his investigation to Sosnak because he was no longer employed by CTC when this suit was filed. Under the Federal Rules of Civil Procedure, a party is entitled to documents in the "possession, custody or control" of its opposing party. The term "control" is construed broadly, such that "[a] party controls documents that it has the right, authority, or *ability* to obtain upon demand." *Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 233 F.R.D. 338, 341 (S.D.N.Y. 2005) (citations omitted) (emphasis added). Generally, a party does not have to turn over materials in the hands of former employees because such materials are typically not available to it. *See Lintz v. Am. Gen. Fin., Inc.*, No. Civ. A. 98–2213–JWL, 1999 WL 619045, at *2 (D. Kan. Aug. 2, 1999). However, "[a]nalyzing the practical ability of corporations to obtain work-related documents from former employees, courts insist that corporations, at the very least, *ask their former employees to cooperate* before asserting that they have no control over documents in the former employees' possession." *Export-Import Bank*, 233 F.R.D. at 341 (citations omitted) (emphasis added).

Thus, in this case, CTC should have contacted Sosnak, prior to serving its Initial Disclosures and responding to Plaintiff's initial document requests, "to ascertain whether [he] took responsive documents with [him] when [he] left." *McCoy v. Whirlpool Corp.*, 214 F.R.D. 637, 641 (D. Kan. 2003). The fact that CTC secured Sosnak's appearance at his deposition, even accepting service on his behalf, suggests that it could have discharged this duty with relative ease. *See Export-Import Bank*, 233 F.R.D. at 342. If Sosnak said that he could not recall taking any photographs, that would have been the end of the matter; nothing further would have been required from CTC. But it apparently failed to even take that step.

While counsel for CTC did ask Sosnak whether he had any items responsive to Plaintiff's subpoena immediately prior to his deposition, it was too late by this time. CTC's duty to investigate was triggered *before* it made its initial disclosures and responded to Plaintiff's document requests, not months into the lawsuit on the eve of Sosnak's deposition. Had the question been asked prior to that date – some 18 months after the incident occurred – it is more likely that Sosnak would have recalled having taken the pictures, as the incident would have been fresher in his mind.

CTC also argues that it, in essence, did Plaintiff a favor by "independently determining that possible photos existed" instead of "le[aving] Newill to his own devices to determine if Sosnak had taken photos and complied with Newill's subpoena." Def.'s Resp. to Pl.'s Mot. to Comp. 15 (ECF No. 30). In making this argument, CTC misapprehends the standard imposed by Rule 26(a), for "the burden does not fall on plaintiff to learn whether, how and where defendant keeps relevant documents." *Tarlton v. Cumberland Cnty. Corr. Fac.*, 192 F.R.D. 165, 170 (D.N.J. 2000). Nor does the fact that the photographs were eventually produced absolve CTC for its failure to reasonably investigate whether they existed at the outset of this lawsuit. *See, e.g.*, *Wollam v. Wright Med. Grp., Inc.*, No. 10–cv–03104–DME–BNB, 2011 WL 1899774, at *5 (D. Colo. May 18, 2011) (explaining that "[t]he duty to supplement does not relieve the responding party of its obligation, in the first instance, to make the necessary, thorough search and to produce all known discoverable documents within approximately 30 days after service of the request for production."); *Tarlton*, 192 F.R.D. at 170 (concluding that "[d]efendants are sadly mistaken" insofar as they claim that "there can be 'no harm, no foul'" since sought after documents were eventually produced).

Having found that CTC violated its duty to undertake a reasonable investigation to

uncover potentially relevant documents, the Court must now determine whether this conduct warrants a sanction. As noted, Plaintiff requests permission to re-depose Sosnak and, if necessary, Mozie, and for CTC to bear the costs. A number of our sister courts in this Circuit and around the country have found that what Plaintiff has requested is an appropriate remedy in situations where a party's failure to timely produce relevant documents necessitates the re-opening of a deposition. *See, e.g.*, *All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146–L (BLM), 2013 WL 1882260, at *13 (S.D. Cal. May 3, 2013); *Pinstripe, Inc. v. Manpower, Inc.*, No. 07-CV-620-GKF-PJC, 2009 WL 2252131, at *4 (N.D. Ok. July 29, 2009); *Yeisley v. Penn. State Police*, No. 3:CV-05-1650, 2008 WL 906465, at *3 (M.D. Pa. March 31, 2008); *Tarlton*, 192 F.R.D. at 170-71; *Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 693 (D. Kan. 1996); *Miller v. Fed. Ex. Corp.*, 186 F.R.D. 376, 390 (W.D. Tenn. 1999).

This Court agrees that such a sanction would be appropriate in this case, as there would be no need for an additional deposition had CTC fulfilled its discovery obligations in the first instance. Therefore, Plaintiff will be permitted to re-depose Sosnak for the limited purpose of questioning him about the photographs – this should not be a time-consuming endeavor – and the costs, including reasonable attorney's fees, shall be borne by CTC. The Court will not, however, impose the conditions requested by Plaintiff: (1) that the deposition take place at Plaintiff's counsel's office; (2) that CTC bear the costs of hiring a caretaker for Sosnak's mother, who lives with him, so that Sosnak can attend a deposition; and (3) that CTC bear the costs of having the second deposition video recorded. While the Court does not find, as CTC contends, that these conditions are necessarily "punitive," the parties should work together to come up with a mutually agreeable time and manner in which to conduct the deposition, balancing the family obligations of Sosnak with the need to properly conduct his second deposition.

On the other hand, the Court agrees with CTC that there is no basis to permit the re-opening of Mozie's deposition. Under Fed. R. Civ. P. 30(a)(2), in deciding whether to permit a party to conduct a second deposition of someone who has already been deposed, the Court must consider the factors set forth in Rule 26(b)(2). Those factors require the Court to limit discovery "if it determines that:"

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). Plaintiff has informed the Court that Mozie's first deposition cost $2,368.34, nearly half of which was attributed to the $600.00 videoconference fee and the $515.00 videotape fee. *See* Pl.'s Mot. to Comp. 7 (ECF No. 26). Mozie's second deposition would likely be just as costly because it would again be conducted by videoconference and be videotaped. On the other hand, the need for Moznie's testimony about the photographs is questionable. Mozie already testified that he saw Sosnak taking the photographs. He has no other information about the circumstances under which they were taken or why they were turned over so late. Any additional testimony from him would likely be limited to whether the conditions depicted in the photographs are consistent with what he saw on the date of Plaintiff's accident. While such testimony would certainly be relevant, and perhaps helpful to place the rest of Mozie's testimony and the photographs in context, its need is far outweighed by the costs of conducting a second video deposition. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

Furthermore, should Plaintiff determine after Sosnak's second deposition that he wishes to re-depose other individuals, he should file a motion for leave pursuant to Fed. R. Civ. P. 30(a)(2) **within 14 days of Sosnak's deposition**. Any such motion should set forth the individuals sought to be deposed and the information sought to be obtained and explain why the taking of an additional deposition would comport with the factors in Fed. R. Civ. P. 26(b)(2).

Finally, Plaintiff's asks the Court to award him the costs of bringing the present motion under Rule 37(a). Rule 37(a)(5)(A) provides that a court must award a successful party seeking a motion to compel the "reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, Rule 37(a)(5)(C) provides that, if a court grants in part and denies in part a motion to compel, "the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Therefore, because the Court has granted in part and denied in part Plaintiff's motion, the Court has discretion in deciding whether to award expenses. After considering all of the circumstances – primarily the fact that CTC has already been ordered to pay the costs of re-deposing Sosnak – the Court finds that an award of expenses to Plaintiff is not warranted.

### III. Conclusion

Based on the foregoing reasons, Defendant CTC's motion to strike will be **DENIED** and Plaintiff's motion to compel will be **GRANTED** in part, and **DENIED** in part.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS JAMES NEWILL,
        Plaintiff,

v.

CAMPBELL TRANSPORTATION COMPANY, INC.,
        Defendant.

) 2:12-cv-1344

## ORDER OF COURT

AND NOW, this 12th day of November 2013, in accordance with the with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, and DECREED** that CAMPBELL TRANSPORTATION COMPANY, INC'S MOTION TO STRIKE PLAINTIFF'S NOTICE TO COURT CONCERNING PHOTOGRAPHS PRODUCED TODAY BY U.S. COAST GUARD (ECF No. 37) is **DENIED** without prejudice and PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PAY ALL COSTS, EXPENSES, AND ATTORNEY'S FEES FOR RE-DEPOSING CERTAIN FACT WITNESSES REGARDING LATE-PRODUCED DOCUMENTS (ECF No. 26) is **GRANTED** in part and **DENIED** in part, as follows:

- Plaintiff is permitted to re-depose Michael Sosnak. The deposition shall be limited to questions pertaining to the three late-produced photographs of the barge CBL-7810. The deposition must occur on or before November 29, 2013. The reasonable costs of conducting the deposition shall be borne by Defendant Campbell Transportation Company, Inc.;

- Plaintiff may not re-depose John Mozie;

- Plaintiff must file seek leave of Court pursuant to Fed. R. Civ. P. 30(a)(2) within 14 days of Sosnak's deposition if afterward he believes that any further depositions are necessary

or appropriate; and

- Plaintiff's counsel shall present to the Court a statement of all the above-described costs and attorney's fees incurred following the conclusion of the Sosnak deposition, after which the Court will afford CTC an opportunity to respond to the statement.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **Frederick B. Goldsmith, Esquire**
Email: fbg@golawllc.com
**Dennis A. Watson, Esquire**
Email: dwatson@grogangraffam.com
**Ruth M. Gunnell, Esquire**
Email: rgunnell@grogangraffam.com